**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KLEIN TOOLS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 1:25-cv-08862 |
| | ) | |
| v. | ) | Hon. Sara L. Ellis |
| | ) | |
| **ITS2LIT LLC, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST**
**DEFENDANTS ITS2LIT LLC AND CHRISTOPHER VINCENT**

## I. INTRODUCTION

Plaintiff Klein Tools, Inc. ("Klein") respectfully requests that the Court enter default judgment against Defendants ITS2LIT LLC and Christopher Vincent (collectively, "Defendants"). As set forth in the Complaint and herein, without Klein's authorization, Defendants advertised and sold a high volume of non-genuine and stolen goods bearing Klein's registered trademarks ("Infringing Products") on www.amazon.com ("Amazon"). Despite being properly served with the Summonses and Complaint, Defendants have failed to plead or otherwise defend, and the Court entered a default against Defendants on September 22, 2025. (Dkt. No. 15, Entry of Default).

Pursuant to Federal Rule of Civil Procedure 55(b), Klein now respectfully requests this Court enter default judgment against Defendants, including an award of damages, substantiated by information obtained through communications with Amazon.com, Inc. ("Amazon.com"), and the issuance of a permanent injunction that would prohibit Defendants from infringing Klein's Trademarks and require Amazon.com, Inc. ("Amazon.com") to continue its freeze on Defendants' assets in Defendants' Amazon account to be used to satisfy the award of damages.

1

## II.     FACTUAL BACKGROUND

Klein is a worldwide leader in manufacturing hand tools and related accessories. (Dkt. No. 1, Complaint at ¶ 13.) Klein sells its products under various trademarks registered with the United States Patent and Trademark Office (collectively, the "Klein Trademarks"). (*Id.* at ¶ 17.) Klein allows its products to be sold to end-user consumers in the United States only by sellers who Klein has expressly authorized to sell its products ("Authorized Sellers"). (*Id.* at ¶¶ 14, 111.)

Klein contractually requires its Authorized Sellers to follow numerous quality controls when selling Klein products. (Compl. at ¶¶ 55–84.) For example, Klein requires Authorized Sellers to inspect products and report issues to Klein, prevent customers from receiving damaged or defective products, store Klein products in a cool dry place away from volatile chemicals, refrain from relabeling, repackaging, or altering Klein products or labeling, and cooperate with Klein with the enforcement of quality controls by reporting customer feedback regarding Klein products to Klein and assisting in the dissemination of consumer safety and recall information. (*Id.* at ¶¶ 63–68.) Klein also prohibits Authorized Sellers from selling products to any third party who is not an Authorized Seller and who intends to resell the products. (*Id.* at ¶ 59). These rules are designed to prevent unauthorized sellers from obtaining and reselling products outside of Klein's quality controls and follow a verifiable chain of custody from Klein to the end-user consumer. (*Id.* at ¶¶ 58–59, 61).

Because product quality risks are particularly heightened when products are sold online, Klein requires its Authorized Sellers that sell online to follow additional requirements. (Compl. at ¶¶ 72–84). Authorized Sellers are allowed to sell Klein products online only on websites that they operate in their own legal name or registered fictitious name ("Permissible Websites") or other websites after receiving prior written approval from Klein ("Authorized Websites"). (*Id.* at

¶¶ 74–76). Authorized Sellers that sell Klein products through their own websites or other approved websites ("Authorized Online Sellers") must then have a mechanism for receiving customer feedback on their website, keep copies of all information and responses related to customer feedback, provide customer feedback information to Klein upon request, clearly state their business name and contact information on all websites where they sell, and not use any third-party fulfillment service that could cause or allow customers to receive Klein products from other sellers' stock when they purchase products. (*Id.* at ¶¶ 79, 81–82). Klein also ensures that all of its Authorized Online Sellers are continuing to follow its quality controls by requiring Authorized Online Sellers to provide Klein access to and copies of any websites where Authorized Online Sellers are selling Klein products. (*Id.* at ¶ 80).

Klein's quality control requirements are important because unauthorized sellers who are not contractually required to follow Klein's requirements often sell poor-quality products to consumers. (Compl. at ¶¶ 43–50.) This problem is especially severe on online marketplace websites like Amazon because consumers cannot examine products before purchase and often falsely believe they are purchasing from the manufacturer or an authorized seller rather than from an unauthorized seller that is outside of and does not follow the manufacturer's quality controls. (*Id.* at ¶¶ 35–36.) Consumers who purchased Klein products from unauthorized sellers on online marketplaces have received poor-quality products and left extremely negative online reviews of the products harming Klein's reputation. (*Id.* at ¶¶ 43–50.)

To further increase consumer confidence in its products, Klein provides limited warranties for Klein products purchased from Authorized Sellers. (Compl. at ¶ 88). Under the Klein limited warranties, consumers can receive product repair, replacement product, or refund if a product has a defect in materials or workmanship during the warranty period applicable to the product. (*Id.* at

3

¶ 87). However, the Klein limited warranties do not cover Klein products sold by unauthorized sellers because Klein is not able to exercise its quality control standards for these products and therefore cannot ensure the quality of the products. (*Id.* at ¶ 88).

Because the unauthorized sale of Klein products on online marketplaces poses risks to consumers and the goodwill associated with the Klein Trademarks, Klein actively monitors the sale of its products online. (Compl. at ¶ 89). Through its monitoring, Klein discovered that Defendants were selling a high volume of Infringing Products on an Amazon storefront named "ITS2LIT LLC" (the "Amazon Storefront"). (*Id.* at ¶ 90.) Klein sent a cease-and-desist letter to Defendants, explaining that Defendants were infringing on Klein's Trademarks, interfering with Klein's agreements with its Authorized Sellers, and causing harm to Klein through their sales of Infringing Products on the Amazon Storefront. (*Id.* at ¶ 96.). Klein's letter also informed Defendants that Klein is based in Illinois and harmed in Illinois as a result of Defendants' sales. (*Id.* at ¶ 96). Klein additionally sent email correspondence to Defendants informing Defendants that Klein intended to file a lawsuit against them for their infringing sales through the Amazon Storefront. (*Id.* at ¶ 95.) Customers have written numerous reviews of Defendants' Amazon Storefront in which they complained of various issues such as exceptionally poor service and receiving damaged, nonfunctional, and previously opened products. (*Id.* at ¶ 110). These reviews are similar to numerous negative reviews of Klein products Defendants have sold that appear on the Amazon website. (*Id.* at ¶¶ 43–50).

On July 29, 2025, Klein filed its Complaint against Defendants and brought claims for trademark infringement and unfair competition under federal law and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 – 510/7. (*See* Dkt. 1, Compl.). On August 17, 2025, Klein served its Complaint and the Court's Summonses on Defendants at their

office and thereafter mailed copies to Defendants at the same address. (Dkt. No. 12, Certificates of Service). Defendants failed to properly appear, answer, or otherwise respond to Klein's Complaint and the Court entered a default against Defendants on September 22, 2025. (Dkt. No. 15, Entry of Default).

### III. LAW AND ARGUMENT

#### a. The Court Should Enter Default Judgment

When a default has been entered, all well-pleaded factual allegations relating to liability are taken as true. *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016). In this case, the well-pleaded allegations of Klein's Complaint establish that the Court has jurisdiction over this case, Klein has stated claims against Defendants, and Klein is entitled to a permanent injunction and damages.

#### 1. Service of process and jurisdiction are proper.

The Court has subject matter jurisdiction over Klein's Lanham Act claims based on federal question jurisdiction, 28 U.S.C. §§ 1331, 1338, and jurisdiction over Klein's Illinois state law claims based on supplemental jurisdiction, 28 U.S.C. § 1367, because they are part of the same case or controversy as Klein's federal claims, both challenging Defendants' sales of products that infringe the Klein Trademarks. *See Fairly Odd Treasures, LLC v. P'ships & Unincorporated Ass'ns*, No. 1:20-cv-01386, 2020 U.S. Dist. LEXIS, at *2 (N.D. Ill. Aug. 26, 2020).

This Court also has specific personal jurisdiction over Defendants because Defendants have sold substantial quantities of infringing products bearing the Klein Trademarks to consumers in Illinois through their Amazon Storefront, causing harm in Illinois and giving rise to Klein's claims. (Compl. at ¶¶ 10-11, 102) Because Illinois' long-arm statute allows for the exercise of personal jurisdiction to the full extent permissible under the United States Constitution, federal courts in

5

Illinois have specific personal jurisdiction over nonresident defendants if: (1) the defendant "purposefully availed [itself] of the privilege of conducting business in [Illinois] or purposefully directed [its] activities at [Illinois]"; (2) the plaintiff's injury [arose] out of the defendant's forum-related activities"; and (3) the "exercise of personal jurisdiction [comports] with traditional notions of fair play and substantial justice." *Curry v. Revolution Labs, LLC*, 949 F.3d 385, 393, 398 (7th Cir. 2020).

Numerous federal courts within Illinois and around the country have held these constitutional Due Process standards are satisfied—and thus a defendant is subject to specific personal jurisdiction—when, as here, an out-of-state defendant is selling products into the forum state through an interactive, commercial website that infringe the plaintiff's intellectual property or otherwise cause harm and give rise to the plaintiff's claims. *See, e.g., NBA Props. v. HANWJH*, 46 F.4th 614, 620-27 (7th Cir. 2022) (out-of-state defendant subject to personal jurisdiction because it sold an allegedly infringing product into forum state through online marketplace website); *ADG Concerns, Inc. v. Tsalevich LLC*, No. 18-cv-00818-NC, 2018 WL 4241967, at *2 & n.4 (N.D. Cal. Aug. 31, 2018) (same); *Fairly Odd Treasures*, 2020 U.S. Dist. LEXIS 247712, at *2 (personal jurisdiction over defaulting defendants that sold counterfeits online and thus "aimed such site at Illinois by standing ready, willing and able to ship its counterfeit goods to customers in Illinois"). Consistent with the reasoning in these cases, Klein's jurisdictional allegations—which must be accepted as true, *VLM Food Trading*, 811 F.3d at 255—establish this Court has personal jurisdiction over Defendants.

Defendants were also properly served with process on August 27, 2025, ten days after Klein's Complaint and the Court's Summons were delivered to Defendants at their office and thereafter mailed to Defendants in accordance with California law. (Dkt. Nos. 12-13.)

### 2. Klein has properly stated claims for relief.

Klein has also sufficiently pled all of its claims against Defendants. Default judgment is proper when the plaintiff has properly pled its claims, taking "all of the Plaintiff's factual allegations, except as to damages . . . as true." *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 632 (N.D. Ill. 2016). For the following reasons, Klein has properly stated each of the claims in their Complaint.

Klein's claims for trademark infringement under the Lanham Act, unfair competition under the Lanham Act, trademark infringement under Illinois common law, and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 – 510/7 all have the same elements of proof. *See Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001); *Tony Jones Apparel, Inc. v. Indigo USA, LLC*, No. 03 C 0280, 2003 WL 22220193, *5 (N.D. Ill. Sep. 23, 2003). To prevail on each of these claims, Klein must show: (1) they have a protectable trademark; and (2) Defendants' use of the mark is likely to cause confusion among consumers. *See Trans Union*, 142 F. Supp. 2d at 1038; *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001); *M-F-G Corp. v. EMRA Corp.*, 626 F. Supp. 699, 707 (N.D. Ill. 1985).

Although courts generally consider a group of factors in determining whether a defendant's use of a trademark created a likelihood of confusion, courts conduct a different analysis when, as in this case, a defendant is reselling products the plaintiff manufactured bearing the plaintiff's actual marks. In this circumstance, courts hold the defendant's sales are likely to cause confusion if the products it sells are (1) materially different from products sold by the plaintiff, *see, e.g., Brilliance Audio, Inc. v. Haights Cross Communs., Inc.*, 474 F.3d 365, 370 (6th Cir. 2007); *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1071-73 (10th Cir. 2009); *Davidoff & Cie., S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001); *Societe Des Produits Nestle, S.A. v. Case Helvetica, Inc.*, 982 F.2d 633, 638 (1st Cir. 1992), or (2) the products being sold do not meet

7

with the plaintiff's legitimate quality controls or are being sold in a manner that prevents the plaintiff from being able to exercise its quality controls. *See Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006); *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243-44 (2d Cir. 2009); *Skullcandy, Inc. v. Filter USA, Inc.*, No. 2:18-CV-00748-DAK, 2019 WL 2568010, at *6-7 (D. Utah June 21, 2019); *Desmond v. Chi. Boxed Beef Distribs.*, 921 F. Supp. 2d 872, 881 (N.D. Ill. 2013).

Here, Klein has properly alleged it owns valid, protectable trademarks. (Compl. at ¶¶ 17-18.) Klein has also properly alleged Defendants' use of Klein's Trademarks is creating a likelihood of confusion. First, Klein alleged Defendants are selling non-genuine products materially different from genuine Klein products because they are not eligible for the limited warranties and do not come with the same customer service benefits that come with genuine Klein products sold by Defendants. (*Id.* at ¶¶ 85-88, 115-19, 136, 159, 163.) Numerous courts have held differences in benefits such as warranties, satisfaction guarantees, and customer service commitments are material differences that can create a likelihood of consumer confusion. *See, e.g., ABG Prime Grp., Inc. v. Innovative Salon Prods.*, No. 17-12280, 2018 WL 2937327, at *4-5 (E.D. Mich. June 12, 2018) (holding plaintiff stated claim for trademark infringement because of allegation defendant was selling products bearing plaintiff's trademarks that were not covered by plaintiff's satisfaction guarantee); *Herbalife Int'l of Am., Inc. v. Healthy1 Inc.*, No. 2:18-cv-6378-JFW-JC, 2019 WL 7169795, at *4 & n.7 (C.D. Cal. July 8, 2019) (same).[1]

Second, Klein has alleged the products Defendants are selling are not subject to Klein's quality control requirements and interfere with Klein's ability to exercise their quality controls. (Compl. at ¶¶ 50, 94, 103, 108-09, 111-12, 114, 162-63, 165-66.) Courts around the country have

---

[1] *See also Beltronics*, 562 F.3d at 1073; *Davidoff*, 263 F.3d at 1302; *Brilliance Audio*, 474 F.3d at 370.

8

held that such allegations state a claim for trademark infringement. *See, e.g., Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 229-30 (S.D.N.Y. 2011) (plaintiff has claim for infringement when defendant's resale of plaintiff's product "deprives [plaintiff] of an opportunity to exercise quality control"); *Skullcandy*, 2019 WL 2568010, at *6-7 (denying motion to dismiss because defendant was selling products in manner that "interfered with the trademark holder's ability to implement its quality controls" and "actual quality of the goods" sold by defendant is "irrelevant").[2] Further, although not necessary to state a claim under the "quality control exception" to the first sale doctrine, Klein has also alleged how Defendants are likely failing to abide by Klein's quality controls and selling poor quality products that cause consumers to write negative reviews of Klein products on Amazon. (Dkt. 1 at ¶¶ 43-54, 103, 108-09, 111-12, 162-63, 165-66.)

### b. The Court Should Grant Injunctive Relief and Damages in the Form of Disgorgement of Defendants' Profits

As remedies for Defendants' violations of their rights, Klein seeks: (1) a permanent injunction to prevent Defendants from further infringing the Klein Trademarks and interfering with Klein's contracts; and (2) an award of damages in the form of Defendants' profits from their sales of Infringing Products.

### 1. The Court should be grant a permanent injunction prohibiting Defendants from using the Klein Trademarks and selling products bearing the Klein Trademarks.

The Lanham Act gives the Court the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116. To obtain a permanent injunction in a Lanham Act case, a plaintiff must show: (1) "that it has suffered an irreparable injury"; (2) "that

---

[2] *See also, e.g., Hand & Nail Harmony, Inc. v. Int'l Nail Co.*, No. CV 15-02718 SJO (AJWx), 2015 U.S. Dist. LEXIS 67421, at *28-29 (C.D. Cal. May 22, 2015); *Desmond,* 921 F. Supp. 2d at 881-83; *see also Lorillard*, 453 F.3d at 382; *Zino Davidoff*, 571 F.3d at 243; *API v. Cooper*, 718 F.3d 347, 359 (4th Cir. 2013).

9

remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) "that the public interest would not be disse[rv]ed by a permanent injunction." *MetroPCS*, 215 F. Supp. 3d at 638; *see also eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (same). Here, Klein has met all four of these elements.

*First,* Klein has suffered an irreparable injury. A plaintiff is "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for permanent injunction." 15 U.S.C. § 1116(a); *MetroPCS*, 215 F. Supp. 3d at 639 ("irreparable harm and inadequate remedy at law are presumed in trademark and trade dress infringement cases"). Klein has shown Defendants have infringed their trademarks and no factors exist in this case to rebut the presumption of irreparable harm. To the contrary, Klein has pled Defendants' actions have damaged Klein's reputation by causing consumers to receive poor quality products and leave negative reviews of Klein products (Compl. at ¶¶ 43-54), interfere with Klein's quality control program (*id.* at ¶¶ 103-09), and damage Klein's business relationships (*id.* at ¶¶ 122-23).

*Second,* damages alone are inadequate to compensate for Klein's injury. Without an injunction, Defendants will likely continue to infringe Klein's Trademarks and Klein "would be forced to repeatedly file suit any time" Defendants do so. *MetroPCS*, 215 F. Supp. 3d at 639 (finding damages inadequate). Moreover, Defendants have not appeared in this case and have thus "shown complete disregard for [their] legal obligations and the jurisdiction of this Court." *Id.*

*Third,* the balance of hardships "weighs strongly" in favor of Klein. *MetroPCS*, 215 F. Supp. 3d at 640. As explained under the irreparable harm factor, Klein is "threatened with significant irreparable injury," including damage to its brands, quality control programs, and

business relationships. *Id.* On the other hand, the proposed injunction merely stops Defendants from selling Infringing Products under Klein's Trademarks and causes no cognizable harm to Defendants because Defendants have "no legitimate interest in illicitly trafficking in" Infringing Products bearing the Klein Trademarks. *Id.*

***Finally,*** granting an injunction is in the public interest. The "public interest lies in favor of upholding property interests in trademarks and preventing customer confusion." *MetroPCS*, 215 F. Supp. 3d at 640. The proposed injunction would minimize the risk that members of the public receive materially different products when they shop for Klein products online. *See id.* (public interest in obtaining genuine product weighed in favor of injunction).

This Court has routinely granted permanent injunctions when all such criteria are met. *See, e.g.*, *Klein Tools, Inc. v. Leetronics Corporation, et al.*, No. 1:24-cv-03024, Dkt. No. 28 (N.D. Ill. Oct. 10, 2024) (granting default judgment and permanent injunction for plaintiff's claims of trademark infringement and unfair competition under the Lanham Act and violation of the Illinois Uniform Deceptive Trade Practices Act); *Alticor Inc. et al. v. Ganjingzi District Chengcheng Orange Trading Company, et al.*, No. 1:24-cv-08821, Dkt. No. 30 (N.D. Ill. Apr. 16, 2024) (same).

### 2. Klein is entitled to an award of Defendants' profits.

Although a permanent injunction will stop Defendants from infringing the Klein Trademarks in the future, injunctive relief will not remedy the damage Defendants have caused through their sales of Infringing Products. Accordingly, Klein also seeks disgorgement of Defendants' profits from their sales of Infringing Products.

Under the Lanham Act, a trademark owner may recover, "subject to the principles of equity . . . (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). A defendant's profits may be recovered under the Lanham Act

because it is often difficult for trademark owners to prove actual damages caused by infringing conduct. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), *abrogated on other grounds by, and superseded by statute on other grounds as recognized in SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016).

In establishing a defendant's profits, a plaintiff is required to prove only the defendant's sales of infringing materials; it is then the defendant's burden to submit evidence of costs and deductions to allow the court to determine the defendant's profits. *See* 15 U.S.C. § 1117(a); *4SEMO.com Inc. v. S. Ill. Storm Shelters, Inc.*, 939 F.3d 905, 911 (7th Cir. 2019). If the defendant does not present any evidence of its costs and deductions, courts award the defendant's total sales to the plaintiff as disgorged profits. *See, e.g., Craigslist, Inc. v. Kerbel*, No. C-11-3309 EMC, 2012 WL 3166798, at *18 (N.D. Cal. Aug. 2, 2012) ("[S]ales are equivalent to profits absent evidence from the defendant as to costs or other deductions from said profits."); *WMS Gaming, Inc. v. WPC Prods., Ltd.*, 542 F.3d 601, 609 (7th Cir. 2008) (collecting cases).

A plaintiff seeking disgorgement of a defendant's profits is required to establish the defendant's sales only with "reasonable certainty." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004); *Broan Mfg. Co. v. Associated Distribs.*, 923 F.2d 1232, 1235-36 (6th Cir. 1991); *Lindy*, 982 F.2d at 1407. "[O]nce the existence of damages has been shown, all that an award . . . requires is substantial evidence in the record to permit a factfinder to draw reasonable inferences and make a fair and reasonable assessment of the amount of damages." *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 342 (6th Cir. 2010); *see also Lindy*, 982 F.3d at 1407-08 (explaining although "a reasonable basis for computation must exist . . . damages are not rendered uncertain because they cannot be calculated with absolute exactness."). If the amount of damages can be ascertained by documentary evidence or detailed affidavits submitted by the plaintiff, a court can award damages

12

at default judgment without needing to hold a hearing on damages. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

Here, through communications with Amazon.com, Klein has determined the exact total of Defendants' sales of Infringing Products through their Amazon Storefronts from approximately May 2024-May 2025. *See* Declaration of Natalia Steele, Esq. ("Steele Decl."), attached here as Ex. 1, at ¶¶ 7, 9. That total is $44,239.53. *Id.*

Accordingly, Klein should be awarded $44,239.53 if Defendants do not present any evidence of their costs or deductions. *See Klein Tools, Inc.*, No. 1:24-cv-03024, Dkt. No. 28 (awarding plaintiff $125,055.78 at default judgment based on data reflecting defendants' sales obtained from Amazon.com in discovery); *Alticor Inc. et al.*, No. 1:24-cv-08821, Dkt. No. 30 (same, but awarding $765,577.36). This request is carefully tailored to exactly match Defendants' total sales of Infringing Products and is considerably below awards of damages that other courts have awarded at default judgment when plaintiffs presented evidence of defendants' sales of materials that infringed plaintiffs' trademarks.[3]

### C. This Court Should Order Amazon to Freeze Defendants' Assets In Defendants' Amazon Account So The Assets Can Be Used To Satisfy Klein's Requested Judgment

Klein also requests this Court, through its inherent equitable power, order Amazon.com to freeze all funds in Defendants' account with Amazon.com ("Amazon Account") so the funds can be preserved and used to satisfy Klein's requested judgment of $44,239.53. When plaintiffs request injunctive relief or disgorgement of defendants' profits under the Lanham Act, courts have inherent equitable power to order third parties to freeze assets to assure the availability of funds to

---

[3] *See, e.g., Herbalife*, 2019 WL 7169795, at *6 (awarding plaintiff $8,419,400.75 at default judgment based on data reflecting defendants' sales obtained from Amazon.com in discovery); *Mary Kay Inc. v. Agudelo*, No. 3:19-cv-03027, ECF No. 73 (N.D. Tex. Dec. 23, 2019) (same, but awarding $1,518,935.43 to plaintiff).

13

satisfy a final judgment. *See, e.g., Sports Co. S.p.A v. A Cheap Body Shop*, No. 1:21-CV-02906-JPB, 2021 U.S. WL 6050847, at *3 (N.D. Ga. Dec. 21, 2021) (ordering third parties to freeze defendants' assets as part of order entering default judgment and awarding damages "to preserve assets that might be used to satisfy a final judgment" and "because [of] the risk that Defaulting Defendants might transfer or hide their assets"); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 986-87 (11th Cir. 1995) (holding request for equitable relief under the Lanham Act properly "invokes the district court's inherent powers" to issue an asset freeze, among other relief, "to assure the availability of permanent relief"); *Reebok Int'l, Ltd. v. Marnatech Enters.*, 970 F.2d 552, 559-562 (9th Cir. 1992) (holding request for disgorgement of profits, an equitable remedy, properly invokes the "district court's inherent equitable power" to issue an asset freeze as a remedy "ancillary to its authority to provide final equitable relief").

After learning that Defendants were selling Infringing Products through the Amazon Storefront, counsel for Klein contacted Amazon.com and Amazon.com placed a reserve on Defendants' profits of $44,239.53 in the Amazon Account. *See* Steele Decl. at ¶¶ 3, 5-6. However, Klein needs to have a Court order requiring Amazon to keep these funds frozen to satisfy Klein's requested judgment.

Accordingly, Klein respectfully requests this Court order Amazon.com to freeze all funds in Defendants' Amazon Account and prohibit the withdrawal or transfer of any funds out of the accounts by Defendants so that the funds may be used to satisfy Klein's requested judgment against Defendants. Defendants' Amazon Storefront is the vehicle for Defendants' infringement of the Klein Trademarks, and the funds in Defendants' Amazon Accounts are the direct proceeds of Defendants' infringement. Steele Decl. at ¶ 10. This Court has inherent equitable power to order Amazon.com to freeze the funds in Defendants' Amazon Account so the funds can be used to satisfy

a judgment against Defendants. *See Reebok*, 970 F.2d at 560-61 (holding asset freeze properly provided "ancillary relief necessary to accomplish complete justice" because the frozen assets were "related to" plaintiff's Lanham Act claims and the "final relief which the district court is authorized to grant" under the Lanham Act); *Sports Co*, 2021 WL 6050847, at *3 (ordering third parties to freeze defendants' assets as part of judgment against defendants, in part because of "the risk that Defaulting Defendants might transfer or hide their assets"); *Spin Master v. Alan Yuan's Store,* 325 F. Supp. 3d 413, 427-28 (S.D.N.Y. 2018) (same).

## CONCLUSION

For these reasons, Klein respectfully requests this Court enter an order finding default judgment against Defendants and permanently enjoining Defendants from advertising or selling Klein products on any storefront on Amazon or elsewhere, awarding damages to Klein in the amount of $44,239.53, and ordering Amazon to freeze all funds in Defendants' Amazon Accounts.

Dated: October 16, 2025          Respectfully submitted,

*/s/ Kimberly A. Beis*
Kimberly A. Beis (ARDC 6296490)
VORYS, SATER, SEYMOUR AND PEASE LLP
For Mailing Only:
200 Public Square, Suite 1400
Cleveland, OH 44144
Tel: (312) 858-3123; Fax: (312) 858-3123
kabeis@vorys.com

***Attorneys for Klein Tools, Inc.***